## Sellers *versus* Holman.

A mere naked demand of payment within twenty years before suit brought, *held* not to be sufficient to rebut the legal presumption of payment of notes under seal, payable above 28 years before suit brought upon them—especially when the demand was met by a refusal to pay, an allegation of payment and an ability to prove it; also, that the notes had been afterwards improperly obtained, and a challenge given to sue.

ERROR to the Common Pleas of *Chester county.*

These were two suits, one brought by James M. Sellers, administrator of the estate of —————— Davis, deceased, *v.* Frederick Holman, surviving executor of Frederick Holman, deceased, the other by the same plaintiff *v.* Samuel Holman, administrator *de bonis non cum test. an.* of Frederick Holman, deceased.

The writs were issued on 3d April, 1851.

The cases were tried together.

One of the suits was upon a note, under seal, executed by Frederick Holman, dated April 13, 1819, for $200, payable at six months to Davis. The other was on a note, under seal, executed by Margaret Holman and Frederick Holman, dated May 20, 1822, for $50, payable on demand, to Davis, with interest. On the first note was an endorsement, as follows: "Received, May, 1820, on the within note, twenty dollars." Signed by Davis.

In order to rebut the presumption of payment arising from lapse of time, Mr. Lewis was called, on the part of the plaintiff, who testified that the two notes were left with him for collection by Davis, on 28th January, 1839. That, by letter addressed to Margaret Holman, who was one of the executors of Frederick Holman, deceased, he made claim of payment of the notes. He believed the demand to have been made in the spring of 1839. Soon afterwards he was called on by Samuel Holman (a son of Margaret Holman), at the instance of his mother, and on the same day Samuel Holman told him, in substance, that the notes would not be paid without a contest, and, if they were to be pressed, it was desirable that suit be brought. He testified that he informed

[Sellers *v*. Holman.]

Davis, by letter, of the result of the interview. He further said he afterwards saw Davis, and, at his request, wrote twice again, but received no answer. The matter thus remained till the death of Davis, in 1849, who died in Juniata county.

After Davis's death, the suits on the notes were brought at the request of the administrator of Davis's estate.

Another witness testified that, at the interview referred to in the testimony of Mr. Lewis, the latter was told in substance, that the notes had been paid and taken up by Mrs. Holman, and had been subsequently surreptitiously obtained by Davis, and that they were at that time able to prove it; that the notes would not be paid while it could be helped, and it was requested that suit be brought at once, if it were intended to press them. He thought that the interview occurred not earlier than 1840. He also said he thought Mrs. Holman and Frederick Holman were then and since able to pay the notes.

The question for determination was, whether, under the circumstances, the demand, being within twenty years, was sufficient to rebut the presumption of payment arising from lapse of time.

HAINES, President Judge, charged the jury, *inter alia*, that if the evidence were believed, the legal presumption of payment from lapse of time had not been rebutted in relation to either of the notes. Reference was made to the opinion in Foulk *v*. Brown, 2 *Watts* 215.

Verdicts were rendered for the defendants.

Error was assigned to the charge.

*Pennypacker* and *Lewis*, for plaintiff in error.—It was contended that a demand or payment of interest within twenty years was sufficient to rebut the legal presumption of payment: 19 *Vesey* 196; *Matt. on Pres. Ev.* 379; 11 *Mod.* 2; 6 *Id.* 22; 2 *Atk.* 144; 1 *Ves.* 51; 3 *Bro. Ch. R.* 291; 1 *Term Rep.* 271; 2 *Cranch* 184; 7 *Ser. & R.* 17; 2 *Watts*, Foulk *v*. Brown; 2 *Watts* 255; 9 *Id.* 446.

*Hickman*, for defendant in error.—The doctrine of presumptions was introduced into the Courts of law in analogy to the statute of limitations: 9 *Ser. & R.* 379; 14 *Ser. & R.* 15.

It was contended that a mere naked demand, unanswered, would not rebut the presumption of payment: 1 *Ves. & B.* 536, Hodle *v*. Healey; *Matt. on Pres. Ev. Ch.* 348. To take a case out of the statute of limitations there must be an acknowledgment of the debt: 6 *Watts* 219; 6 *W. & Ser.* 213; 5 *Harris* 286. To hold *a demand* to be sufficient would be to make the plaintiff the actor, and to give to a demand the value of an admission of the debt by

[Sellers *v.* Holman.]

defendant. Reference was made to Cowen and Hill's notes to *Phil. on Ev.* 505–6–7, as to the different circumstances which may repel the presumption, and to the authorities there cited. That *a demand alone* will repel the presumption has not been, *decided.* It is found only in the *dicta* of judges.

The lapse of 20 years, without explanatory circumstances, affords a presumption of payment in the case of *a specialty :* 2 *Greenl. Ev.*, sec. 528 ; 12 *Ves.* 265 ; 2 *Watts* 209, Foulk *v.* Brown ; 16 *Johns.* 210 ; 5 *Barr* 435 ; 2 *Ves. Jr.* 13.

But, especially, a demand met by a denial of indebtedness will not be sufficient to repel the presumption. A *legal* demand operates *per se ;* but a demand, out of Court, is but *the declaration* of the party, and if a reply is made, the declaration and reply are to be taken together. It does not differ from a claim made when no presumption of payment has arisen and an answer denying indebtedness.

The opinion of the Court was delivered by

BLACK, C. J.—The Court below instructed the jury substantially that two notes, one of which was more than thirty and the other upwards of twenty-seven years old before suit brought, must be presumed to have been paid, unless that presumption was met by something more than a mere naked demand of the debt by the obligee within twenty years.

The only fair objection to the charge is, that the judge has defended his positions too well. The question was not worth a tithe of the labor and learning he bestowed on it.

Perhaps, if this point had arisen half a century ago, it would have been decided in the way the plaintiff desires it to be decided now. But the old cases concerning the statute of limitations, and the kindred subject of presumption from lapse of time, are not of very great authority in the present day. Those rules which give repose to society and forbid the assertion of stale claims, after the evidence of their discharge has been lost, are everywhere much more highly appreciated by the Courts now than they were once. It has, however, not been decided in any case, ancient or modern, that a mere demand, without more, is enough to repel the presumption, and in one, at least (1 *Ves. & Be.* 536), the contrary was held. In this state we have never had occasion to determine it. It is a new point here, with the English authorities rather against the plaintiff than for him, while the arguments on principle and policy are altogether in favor of the defendant.

That a specialty or debt of record is paid after twenty years from the time it became due is a presumption of law which the Courts must enforce without inquiring whether it be according to the truth or not. The law has given to this lapse of time a fictitious value, equal to direct proof of payment. But the evidence

[Sellers *v.* Holman.]

of nonpayment, by which the presumption is to be repelled, has no force, except what it derives from its intrinsic power to produce conviction on the mind. A circumstance, therefore, which does not actually disprove the payment, nor satisfactorily account for the delay, is entitled to no weight. The presumption of payment is raised by an artificial rule. It cannot be rebutted, except by evidence which will create a natural presumption, at least equally strong.

Is the evidence in the case before us calculated to satisfy the judgment, that the notes in suit are still unpaid? We think not. On the contrary, a demand promptly met by a distinct refusal to pay rather strengthens the presumption arising from lapse of time, and might very well be offered for that purpose. But here there was something more than refusal. There was a defiance to bring suit, an assertion that the claim had been paid, with a declared readiness to prove it, and, superadded to this, a charge of foul play. It is hard to understand why a man, conscious of being in the right, should have hesitated about bringing his action after that, when character, pride, and feeling, as well as pecuniary interest, would all impel him to do so. The universal desire to enjoy what is our own is enough to make men enforce the payment of debts which they know to be honestly due to them. It is not presumed that any one will disregard this motive for twenty years, and he who does so must give a sound reason for it. The present plaintiff, instead of accounting for the delay, has proved that his intestate had unusually strong reasons for bringing suit. He did not forget it. His mind was on the subject. He was invited and provoked to proceed. He did not rely on the other party's willingness to pay, for he was told that he had got the notes by a fraud, which would be exposed and the payment resisted. The delay alone made this a clear case for the defendant. The other evidence made it irresistible.

Judgment affirmed.